COLE, Judge.
The issue presented here is whether or not the Civil Service Commission erred in ruling the appointing authority failed to prove the employee, Sheryl Goins, orally resigned from her position as a clerk-typist II with the Orleans Parish Board of Jury Commissioners. Because we find the Commission did commit manifest error, we reverse.
At the hearing on the matter the testimony was conflicting. The Director of the Jury Commissioners, Mr. Earl Duplantier, testified he and Ms. Goins had become involved in an argument in his office on April 1,1980. At that time she allegedly told Mr. Duplantier “I quit.” He then asked the bookkeeper to figure up the amount of annual leave due Ms. Goins. He informed Ms. Goins she would be on annual leave until April 11, 1980, at which time her resignation would become effective. He asked her to submit a written letter of resignation. She returned to work on April 3rd and wrote a letter requesting she be transferred to another state agency. When she attempted to return to work on April 11th she was told by Mr. Duplantier she no longer was employed there and she must leave the premises.
Two office employees testified on behalf of the appointing authority. Ms. Elaine James stated her desk was located near Mr. Duplantier’s office. On the day in question she heard Ms. Goins and Mr. Duplantier arguing and heard Ms. Goins say, “Well, I'll just quit” or “I’ll have to quit.” Another employee, Ms. Emilda Indovina, also overheard the discussion. She too heard Ms. Goins say, “I quit” or “I’ll just have to quit.” Both witnesses admitted they could not remember the exact words spoken by Ms. Goins.
On the other hand, Ms. Goins testified she had not been in Mr. Duplantier’s office on April 1st nor had she had any discussion with him concerning an intention to quit her job. She stated she went to work on April 1st, 2nd and 3rd and on the 3rd wrote the letter requesting a transfer to another agency. She then took her annual leave (in order to search for another job) and returned on April 11th.
In its written opinion the Commission found as a fact the argument took place in Mr. Duplantier’s office on April 1st and that Ms. Goins made statements indicating an intent to quit her job in the future but not an intent to quit her job as of that day. It noted only Mr. Duplantier was certain *27 Ms. Goins had said “I quit.” The other two witnesses were not positive as to the exact words she used and Ms. Goins denied any discussion of the matter. The Commission found the appointing authority had failed to prove Ms. Goins had submitted a verbal resignation. It found the appointing authority had attempted to verbally terminate the appellee when she returned to work on April 3rd which is a violation of Civil Service Rule 12.3.[1] The Commission reinstated Ms. Goins to her former position, with back pay. The appointing authority appealed.
As an appellate court we are entitled to review the Commission’s decision as to both law and fact, but we must give great weight to the factual conclusions. Arnold v. New Orleans Police Department, 383 So.2d 810 (La.App. 4th Cir.1980) writ denied 1980. Generally, administrative boards have great discretion and their decisions will not be set aside in the absence of proof of abuse of such discretion. Flanagan v. Department of Civil Service of the City of New Orleans, 391 So.2d 958 (La.App. 4th Cir.1980).
In this case we find an abuse of discretion by the Commission concerning its factual conclusions. Further we have some difficulty in following the logic of the Commission in this respect. On the one hand, the Commission obviously believed the testimony of Mr. Duplantier and the two office workers as to the fact the argument took place. (It apparently rejected Ms. Goins testimony that no argument occurred and that she had never discussed this matter with Mr. Duplantier.) Yet, on the other hand, the Commission refused to accept the uncontradicted testimony of Mr. Duplantier as to what took place in that discussion. When questioned about the incident, Mr. Duplantier testified as follows:
“A. I was in one of the courts when somebody from the office called me and said they were having a little problem down there with Ms. Goins. I went to see what was going on. I called Ms. Goins and brought her to my office and we started to discuss her problems of somehow not being able to get along with anybody in the office. Ms. Goins got a little upset. She said ‘well, I guess if that’s the way you feel about it, I just as well quit.’ I said ‘Sheryl I’m not telling you what to do. You can do what you want to do.’ She said ‘I quit.’ With that, I told her I would get her records together, put her time together and let her know exactly how much time she had coming to her. I went downstairs, got her leave record, figured out the number of hours of leave she had left, brought it to the accountant, the accountant figured out the pay, submitted it to Ms. Goins, told her that we would pay her on the 11th, I think it was the 11th that it was. And that there ended that day as far as I remember.
Q. Ok, you say now that she did resign her position?
A. She said T quit.’
Q. So you are sure that she didn’t just threaten to resign in the future or say maybe she would and she would think about it?
A. Oh no. No ma’am. She said ‘if that’s the case, I just as well quit’ and that’s when I told her, I said ‘Ms. Goins, Sheryl, you do what you want to do. I am not telling you what to do.’ And she said ‘Well I quit.’
Q. And did you accept her resignation?
A. I most certainly did.”
We find no reason to reject this uncontro-verted testimony. Further, Mr. Duplantier’s testimony was fairly well corroborated by the two office employees who testified they had heard Ms. Goins say “I quit,” or *28 “I’ll have to quit” or words to that effect.[2] Mr. Duplantier’s testimony is supported further by the fact that Ms. Goins was then informed of her annual leave due and did not report to work the next day. When she returned on April 3rd she typed the letter requesting the transfer and was then asked to leave. This evidence, taken as a whole, proves more probably than not, Ms. Goins submitted her oral resignation to Mr. Du-plantier on April 1, 1980.
Oral resignations are allowed under Civil Service Rule 12.8(b). It becomes “an accomplished fact” when accepted by the appointing authority. Rule 12.8(b)l. The resignation may not be rescinded or withdrawn once it is accepted by the appointing authority. Rule 12.8(d)l. Although the appointing authority is required to request a written letter of resignation, the letter is not a prerequisite for the validity of the resignation. In cases where no letter is supplied the appointing authority is to explain in writing to the Director why no letter was provided. Rule 12.8(a). The record contains a “Personnel Action” sheet on which Mr. Duplantier stated that Ms. Goins had orally resigned and had returned to work on April 3rd but did not submit her written letter. We find this fulfills the requirements of Rule 12.8(a). Mr. Duplan-tier’s testimony indicates he indeed accepted Ms. Goins’ resignation. Therefore, the resignation is valid and we reverse the decision of the Commission. Appellee Sheryl Goins is to pay the costs of this appeal.
REVERSED.

. Rule 12.3(a)!. requires the appointing authority to give the employee written reasons for the employee’s removal.

. We do not attach much significance to the fact the employees could not say for sure which phrase Ms. Goins used. Either one expresses an immediate intention to cease employment when viewed within the circumstances.